# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CASE NO. 3:16-CR-175 |
| | : | |
| | : | (JUDGE MANNION) |
| v. | : | |
| | : | |
| JAMES BAILEY-SNYDER, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Pending before the court is the defendant James Bailey-Snyder's motion to dismiss the indictment. (Doc. 50). Based upon the court's review of the motion and related materials, the defendant's motion will be **DENIED**.

### I.  BACKGROUND

On August 10, 2015, federal inmate James Bailey-Snyder, who was then being housed at the Federal Correctional Institution in Schuylkill, Pennsylvania ("FCI-Schuylkill"), was found to be in possession of a seven-inch homemade plastic weapon that was sharpened to a point with a shoelace string attached as a handle (commonly known as a "shank"). (Doc. 1). Later that same day, Bailey-Snyder was transferred to FCI-Schuylkill's Special Handling Unit ("SHU"), which is an administrative detention facility, where Bailey-Snyder remained in isolation pending further investigation. (Doc. 51).

The parties attempted to reach a pre-indictment plea agreement but were unable to do so. (Doc. 56). As such, the matter was presented to a grand jury for the Middle District of Pennsylvania, which issued a single-count indictment against Bailey-Snyder in the above-captioned case on June 28, 2016. (Doc. 1). The indictment charged Bailey-Snyder with violating 18 U.S.C. §§1791(a)(2) and (b)(3), which forbid the possession of a prohibited object while serving time as a prison inmate. (*Id.*).

Bailey-Snyder pled not guilty to the crimes charged on July 19, 2016. (Doc. 9). After filing a series of motions to extend time limitations and to continue the trial date, Bailey-Snyder filed the instant motion to dismiss the indictment, along with a brief in support, on November 19, 2017. (Doc. 50; Doc. 51). The government filed its brief in opposition to the instant motion on November 30, 2017. (Doc. 56). Trial is currently scheduled for December 11, 2017. This matter has been fully briefed and is now ripe for disposition.

**II.    DISCUSSION**

**A. The Defendant's Speedy Trial Rights**

Bailey-Snyder's primary argument in favor of dismissing the indictment is that the government violated his constitutional and statutory rights to a speedy trial under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C.

§§3161-3174. To this end, Bailey-Snyder alleges that his rights were violated because the government indicted him ten months and eighteen days after his placement into the SHU, which Bailey-Snyder claims constituted an "arrest" for speedy trial purposes. (Doc. 51).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. AMEND. XI. The Sixth Amendment's protections are "activated only when a criminal prosecution has begun and [extend] only to those persons who have been accused [during] the course of that prosecution." *United States v. Marion*, 404 U.S. 307, 313 (1971). Thus, the Sixth Amendment "afford[s] no protection to those not yet accused," nor does it "require the government to discover, investigate, [or] accuse any person within any particular period of time." *Id.* The Supreme Court has interpreted the word "accused" to mean any person who has been arrested or formally indicted. *See id.* at 321 (holding that "[i]nvocation of the speedy trial provision . . . need not await indictment, information, or other formal charge. But we decline to extend that reach of the Amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation").

The Speedy Trial Act ("the Act") establishes more specific time limitations to ensure that the various stages of a criminal proceeding progress

promptly. Specifically, the Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. §3161(b). The Act, however, specifically exempts certain causes of delay from consideration when calculating the total amount of elapsed time, including "delay resulting from any pretrial motion" and "delay resulting from a continuance granted by any judge." *Id.* §3161(h).

This case presents an issue of first impression in the Third Circuit, as our courts have yet to encounter the question of whether an inmate's placement into administrative segregation amounts to an "arrest" for speedy trial purposes. While the Third Circuit has yet to decide this issue directly, other Courts of Appeals have squarely addressed it, and the court finds their reasoning both persuasive and instructive. Those Courts of Appeals that have faced this issue have uniformly concluded that being held in administrative segregation pending criminal charges is not an arrest under either the Sixth Amendment or the Speedy Trial Act. *See, e.g., United States v. Wearing*, 837 F.3d 905, 909 (8th Cir. 2016); *United States v. Daniels*, 698 F.2d 221, 223 (4th Cir. 1983); *United States v. Mills*, 641 F.2d 785, 787 (9th Cir.

1981); *United States v. Blevins*, 593 F.2d 646, 647 (5th Cir. 1979); *United States v. Bambulas*, 571 F.2d 525, 527 (10th Cir. 1978).

The Supreme Court has previously outlined the contours of what constitutes an arrest for speedy trial purposes. "Arrest is a public act that may seriously interfere with the defendant's liberty . . . and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and his friends." *Marion*, 404 U.S. at 320. An inmate's placement into administrative segregation, by contrast, is "in no way related to or dependent on prosecution by the federal government" and is instead "a method of disciplining or investigating inmates who break prison regulations, of protecting certain inmates from members of the general population, and of providing a general cooling-down period for inmates involved in events that could disrupt the general [inmate] population." *Wearing*, 837 F.3d at 909 (quoting *United States v. Duke*, 527 F.2d 386, 390 (5th Cir. 1976)).

Here, FCI-Schuylkill's disciplinary procedures "did not focus public obloquy upon [the defendant], did not disrupt [his] employment or drain [his] financial resources." *Mills*, 641 F.2d at 787 (9th Cir. 1981) (quoting *United States v. Clardy*, 540 F.2d 439, 441 (9th Cir.), *cert. denied*, 429 U.S. 963 (1976)). While Bailey-Snyder's "[a]ctual physical restraint may have increased

- 5 -

and [his] free association [may have] diminished . . . unless we were to say that imprisonment . . . is a continuing arrest, these criteria bear little weight in the peculiar context of a penal institution where the curtailment of liberty is the general rule, not the exception." *Id.* In other words, Bailey-Snyder's placement into the SHU was not a "public act with public ramifications," as an arrest is often considered to be; instead, it was merely a private act. *Id.* In every case where this question has been directly addressed, courts have found that the confinement of a prison inmate in administrative segregation is not the equivalent of an arrest for purposes of either the Sixth Amendment or the Speedy Trial Act. As such, Bailey-Snyder's motion to dismiss cannot succeed on this basis. Finally, since there was no post-accusation delay in this case, the balancing test enunciated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), is inapplicable. *See Mills*, 641 F.2d at 787; *Blevins*, 593 F.2d at 647.

### B. The Defendant's Due Process Rights

Bailey-Snyder's second argument in favor of dismissing the indictment is that his Due Process rights were violated due to the government's pre-accusation delay in bringing an indictment against him.

While statutes of limitations are the criminal defendant's primary safeguard against prejudice from pre-accusation delay, Due Process guarantees stemming from the Fifth Amendment also provide certain

- 6 -

protections. *See Marion*, 404 U.S. at 323-24. *See also United States v. MacDonald*, 456 U.S. 1, 7 (1982) (noting that "[t]he Sixth Amendment right to a speedy trial is . . . not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations"). To establish a Due Process violation based on pre-accusation delay, the defendant must "show both (1) that the delay between the crime and the federal indictment actually prejudiced his defense; and (2) that the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him." *United States v. Beckett*, 208 F.3d 140, 150 (3d Cir. 2000). "[T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco*, 431 U.S. 783, 790 (1977). The reasons for said delay generally must amount to "prosecutorial bad faith." *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir. 1985).

Here, Bailey-Snyder has offered no concrete evidence of prosecutorial bad faith, and any evidence of prejudice is speculative at best. On the first prong of the Due Process analysis, Bailey-Snyder contends that exculpatory video surveillance evidence was lost due to the government's delay in bringing an indictment. (Doc. 51). Specifically, Bailey-Snyder claims that a lost video recording captured corrections officers' initial search of his person, where no

prohibited objects were found. (*Id.*). The government counters this contention by arguing that even if such video evidence existed, the corrections officers ultimately found the shank on Bailey-Snyder's person during a search inside a prison restroom, where no video surveillance is conducted. (Doc. 56). Surveillance recordings at FCI-Schuylkill are preserved only for a set period of time before being disposed of, so Bailey-Snyder argues that these allegedly exculpatory video recordings were lost while he was confined in the SHU and that the government's delay in bringing an indictment subsequently prejudiced his defense. (Doc. 51). Bailey-Snyder further claims that several unidentified defense witnesses, whose names he does not remember, could have been located while he was confined in the SHU but now cannot be found. (*Id.*).

Bailey-Snyder's contentions, however, amount to little more than mere speculation and do not satisfy his burden of demonstrating actual prejudice to his defense. *See United States v. Robles*, 129 F. App'x 736, 738 (3d Cir. 2005) (stating that "[t]o prevail in a Fifth Amendment Due Process claim based on the [g]overnment's pre-accusation delay, a defendant must prove that he was actually prejudiced by the delay"). Even if it could be verified that such video evidence actually existed, there is no guarantee beyond conjecture that the video would have been beneficial to Bailey-Snyder's defense. In addition, Bailey-Snyder is in no worse a position to locate his witnesses now than he

was before any alleged or perceived delay. Bailey-Snyder offers no specific, articulable facts or proposed witness testimony in support of his claims, and such speculative offerings are insufficient to demonstrate prejudice. *See Gulley*, 526 F.3d at 820 (noting that "[t]o establish prejudice, the defendant must offer more than mere speculation of lost witnesses, faded memories or misplaced documents; he must show an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources"). Bailey-Snyder also remains fully able to testify about his own recollection of the events surrounding the corrections officers' search, to cross-examine the corrections officers who searched him, and to develop a record of what actually occurred during the search. Moreover, Bailey-Snyder or his attorney could have requested preservation of this video evidence if they believed that that it would be central to their defense. As such, Bailey-Snyder has not demonstrated any actual prejudice to his defense resulting from pre-accusation delay.

As to the second requirement for establishing a Due Process violation based on pre-accusation delay, Bailey-Snyder has failed to produce any evidence in support of his claim that the government's delay in issuing the indictment was deliberate. Even if Bailey-Snyder's defense were prejudiced by some alleged loss of evidence, a criminal defendant must further demonstrate

that such delay was the result of intentional government misconduct to establish a Due Process violation. *See, e.g.,* Lovasco, 431 U.S. at 783. No such government wrongdoing occurred here. Accordingly, Bailey-Snyder's Due Process challenge to the issued indictment fails, and his motion to dismiss will be denied.

## III. CONCLUSION

Based on the foregoing, the defendant's motion to dismiss the indictment, (Doc. 50), will be **DENIED**. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 7, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2016 CRIMINAL MEMORANDA\16-175-01.docx