1

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA :
                         :
                         :
                         :
    vs                   :    3:16-CR-175
                         :
                         :
                         :
JAMES BAILEY-SNYDER      :
                         :
                         :
```

```
    BEFORE:       THE HONORABLE MALACHY E. MANNION

    PLACE:        COURTROOM NO. 3

    PROCEEDINGS:  SENTENCING

    DATE:         MONDAY, NOVEMBER 20, 2017
```

APPEARANCES:

For the United States:

TODD K. HINKLEY, ESQ.
UNITED STATES ATTORNEY'S OFFICE
WILLIAM J. NEALON FEDERAL BUILDING
SUITE 311
SCRANTON, PA 18501-2830

For the Defendant:

BRANDON R. REISH, ESQ.
31 N. 7TH STREET
STROUDSBURG, PA 18360

2

1          THE COURT:  This is the United States of America

2   against James Bailey-Snyder.  Mr. Snyder, the criminal number

3   in your case is 3:CR-16-175.  We're here for a final pretrial

4   conference in your case.  Now, before we get into that, are you

5   under the influence of any drugs, alcohol, intoxicants or

6   medications that would make you unable to understand the

7   proceedings here today?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  All right.  Now, I note that your counsel

10  filed yesterday a motion to dismiss.  I'll wait until I got the

11  government's response to that in terms of deciding it.  But I'd

12  be disingenuous after having read the entire document and your

13  brief in support and the lack of either Third Circuit prescient

14  related to the issues that you're referring to and the majority

15  of the circuits determining that that argument does have merit.

16  I -- I can tell you that it's a long hard uphill battle.

17          MR. REISH:  I recognize that.  That's why I indicated

18  that every circuit that's considered this, Your Honor, found

19  against me.  Mr. Bailey-Snyder I'm going to -- I gave him the

20  cites to those different circuit cases.  I gave him copies so

21  he can be aware as well.

22          THE COURT:  I just -- you know -- I want you to know

23  that I certainly will read everything as I always do that is

24  submitted, but I wanted you to be prepared for the fact that my

25  review of it would make it difficult -- an unlikelihood that

1  you would have a ruling in your favor in all honesty.  I will

2  wait until I have seen all of the -- I have read your cases and

3  seen the government's response.

4         MR. REISH:  Thank you, Your Honor, for clarifying

5  that.  Hopefully there is facts that are to be developed if Mr.

6  Bailey-Snyder has a chance and opportunity to do so, we welcome

7  that.  But we will await the Court's decision on the other

8  side.

9         THE COURT:  To me it's a purely legal question in all

10  honesty.  The question of -- I know it's been decided on a

11  number of occasions before.  I know that although I don't

12  remember having written on it myself, I have read about it.

13  It's not unusual at all for somebody who is incarcerated

14  depending on the seriousness of the alleged offense that they

15  had been involved with either administratively it's handled and

16  they are put in the special housing unit pending that or

17  there's a referral being made to -- usually the F.B.I. for what

18  they consider to be more serious potential offenses.

19         And again, the determination of where somebody is

20  actually housed in a federal prison has long been decided by

21  everyone including the Supreme Court not a question that of due

22  process, not a question of choice , that an individual has as

23  to where his housing is inside an institution since it all

24  meets the requirements of -- under the Eighth Amendment even

25  those in special housing units.

4

1        So, you know, whether there's an civil case there

2  someplace, you know, I don't know.  But it's -- my reading of

3  the case law would indicate it's fairly unlikely that you're

4  going get a positive determination.  The reason I mention that

5  is that your trial is scheduled for December 11th.  That's when

6  we will begin.  So we will decide it before that.

7        The government -- your response is due two weeks from

8  yesterday I guess.  So I'd appreciate it if you get your

9  response in in that period of time or before so we can resolve

10  that and move on.  So let's talk a little about the trial here

11  at the final pretrial conference.

12        We will begin December 11th at 9:30 in the morning.

13  The jurors will be here before that.  They have to go through

14  their orientation and view a video and gather certain

15  information.  We will begin shortly usually around 9:30.  We

16  will begin with jury selection.  And as a criminal case, we

17  need to pick 12 jurors, and we will pick two alternate jurors

18  is usually the process we use.  The government has six

19  peremptory challenges.  The defense gets ten peremptory

20  challenges.

21        Because we will pick two alternates, each side will

22  get one peremptory challenge related to the two potential

23  alternates.  Now, that being said, my practice has generally

24  been to offer counsel the opportunity -- since technically

25  under the rules the regular jury is selected first at which

1  time you would use your ten for the defense and your six for

2  the government peremptory challenges, and then separately we

3  will pick the alternates which would be one preemptory

4  challenge for each of you because there's two potential

5  alternates being selected.

6          I have offered counsel the opportunity in the past if

7  they want to combine those so that the defense would then

8  receive 11 peremptory challenges and the government would

9  receive seven peremptory challenges.  And the first -- the 14

10 jurors that are left -- the first 14 after you've taken all of

11 your challenges and, of course, changes for cause, the first 12

12 would become the actual sitting jury and members 13 and 14

13 would become the alternates.

14         I offer that because sometimes it's strategically

15 more advantageous for counsel to be able to use their

16 additional peremptory challenge anywhere they want rather than

17 use it on an alternate.  In my experience over the last 15, 16

18 years, I'm trying to remember if we ever used an alternate.

19 And so the result is that it may be more beneficial for you to

20 be able to have that extra peremptory challenge for the jury.

21 But it's up to you.  What are your thoughts, gentlemen, on

22 that?

23         MR. REISH:  I have usually combined them, I believe,

24 Your Honor.  The last -- I think -- the last trial I had I did.

25         MR. HINKLEY:  No objection to that, Your Honor.

6

1    THE COURT:  We will do it that way.  I think that

2  gives both sides an added benefit if that's the right word.  We

3  will go directly from jury selection into the trial, of course,

4  with a break for everyone to be able to get themselves set.  We

5  will commence each day probably around 9:30.  Normally, I look

6  to see where jurors are actually from so we can make a

7  determination we can begin earlier.  But because the area from

8  which we draw has people coming from the New York State boarder

9  or as far south and east as the eastern part of Schuylkill

10  County, it can be a two and a half hour ride for people to get

11  here.  And so I normally -- after you selected your jurors I

12  will take a look and see how far they're coming from.  And if

13  everybody happens to be close we can start at 8:30 each day.

14  If they happen to be longer, which is at least one or two of

15  them usually in the case, we may start at 9 or most likely 9:30

16  each day.

17    We will go until 5:00 or thereabouts.  And so I ask

18  that the parties have whatever witnesses they intend to call

19  prepared and ready.  And when the government is going to be

20  completing your case, please make sure that the defense is

21  aware of that in advance so if there are any witnesses the

22  defense intends to call they'll be able to continue right in

23  and present their case so you won't have any breaks in time or

24  having to wait until the next day to begin the case.  The rules

25  of the courtroom are as you both know -- there are no rules to

7

 1  the extent that your movement is unrestricted.  You can ask
 2  questions sitting, standing, running, jumping, laying --
 3  whatever makes you comfortable.  If you want to approach a
 4  witness, you don't have to ask.  If the other side thinks
 5  you're badgering a witness, they'll make an objection and I
 6  will rule on the objection.
 7          We will break for lunch around noon.  Again, there's
 8  no exact set time.  We will try to pick times that's logical
 9  sense in the testimony that's being presented.  I always like
10  to try to complete witnesses if at all possible before breaks.
11  But if not, we will break in what appears to be a rational or
12  logical time.  If you need a break at any time for any reason,
13  just let me know, and we'll take a break during the course of
14  the case.
15          I would ask that you submit your requested points for
16  charge by -- the 11th is a Monday I assume.  Submit your
17  request to charge by the 7th, which is the Thursday before
18  that, I do ask that a couple things related to requested
19  charge, first is speak with each other.  You know, most of
20  these request to charge are going to be standard jury
21  instructions.
22          For the most part , if not completely you ought to be
23  in agreement as to what the charge is.  As you both know, I use
24  the standard jury instructions approved by the Third Circuit.
25  If for some reason there was not a standard jury instruction

8

1  approved by the Third Circuit, then we go to other either

2  circuits or federal jury instructions.  I virtually only use

3  standard jury instructions unless there was nothing on a

4  particular issue that needed to be charged.  And I don't

5  generally charge any snippets from cases or case law.  I like

6  the tried and true jury instructions so we avoid any kind of

7  misinterpretation or improper language in terms of what could

8  be charged and because if you hunt enough you can find almost

9  anything you want in different judge's opinions.  So that

10  really is not much weight in my mind.

11      MR. HINKLEY:  Your Honor, in regards to those

12  charges, I assume as you said you're just going to be using

13  standard Third Circuit for the particular crime he's charged

14  with, and I am not sure there's any specific instructions I can

15  think of that would be applicable in this case.  The defense

16  may have something.

17      THE COURT:  Yeah, I don't know.  That would depend

18  upon what comes out.  So what I would like to you do is just

19  both you submit hopefully joint charges.  Sometimes even on a

20  standard jury instruction there are kind of fill in the blanks

21  depending on the exact circumstances, and sometimes counsel

22  disagrees on the fill in the blank part of it, or there might

23  be multiple paragraphs of which one side thinks only four of

24  them are applicable and the other side thinks six of them are

25  applicable.  So, you know, but hopefully you'll be able to

1  agree on the charge that's used in the case.  And so that would

2  make certainly everybody's life an awful lot easier and, you

3  know, more appropriately move the case along in a manner that

4  seems to make sense.

5          Although I'm asking you to submit your request to

6  charge by the 7th, that's not foreclosing you from requesting

7  additional charges or requesting to delete a charge that you

8  have submitted before the jury is actually charged.  What we

9  normally do is right before the jury is going to be charged --

10  usually the evening before I'll meet with counsel, and we will

11  have a charge conference to see whether or not there's been any

12  changes that we need to take anything out or whether there's

13  any additions somebody requested.

14          The mere fact I am asking to you submit a charge on

15  December 7th.  It doesn't mean you are somehow bound or

16  foreclosed from submitting other charges if they become

17  appropriate during the trial.  It's really for us to be able to

18  get a heads up and to try to prepare our charge in advance so

19  we don't hold the jury up at the end of the case while we're

20  preparing the charge.  You do have to agree upon a proposed

21  verdict slip.  So the parties must agree on a proposed verdict

22  slip in the case.  That should not be a difficult process.  But

23  it is a requirement of mine that you agree upon your verdict

24  slip in the case.

25          If either side wishes to use the JERS system,

1  electronic system for evidence for the jurors, you need to

2  submit your exhibits in P. D. F. format on or before December

3  -- close of business December 7th as well.  And again that

4  doesn't foreclose you because you have submitted your exhibits.

5  If it turns out there's something that comes up in another

6  exhibit, you will be able to do that.

7          But if you wish to use the electronic system for the

8  jury, we receive all exhibits by electronic format.  Using the

9  television that's in there, we need to be able to upload all of

10  those exhibits.  And then as they are admitted, they'd be

11  released so the jury would be able to view them during their

12  deliberations.  So if you want to do it the standard old

13  fashioned way, you're welcome to do that or you can do

14  everything on paper.  It's completely up to counsel, all right.

15  What else?

16          MR. HINKLEY:  Good question on voir dire, do you

17  allow counsel to --

18          THE COURT:  Yeah, you can actively participate in

19  voir dire.  I will ask what I will call the standard Third

20  Circuit, you know, questions.  But I expect that counsel will

21  actively, you know, participate in jury selection, and I will

22  give you the opportunity to ask questions that you want to ask.

23  I do ask you not to try your case in jury selection.  It's not

24  a closing argument.  But I do understand that in order to get a

25  fair jury that you may have to ask questions that relate to the

1  circumstances, and that's completely appropriate.  So yes, you

2  will be able to participate in your jury selection.  If anyone

3  intends to use any demonstrative evidence during their opening

4  statement since nothing has been actually admitted into

5  evidence yet, I generally don't have a problem with that either

6  as long as it's something that's reasonably likely to be

7  admitted into evidence and that counsel has shown it to the

8  other side beforehand so that each side has an opportunity

9  should they choose to object to it.

10            So I mean, I don't see that often.  But occasionally

11  somebody wants to use some sort of demonstrative during opening

12  statement, and I don't have a problem with that except I do

13  want counsel to be aware of it.  We can discuss any objections

14  to it beforehand so it's not a surprise.  Government will go

15  first obviously in their opening.  Defense second.  Closing

16  government first, defense second, government has rebuttal

17  closing.  What else?

18            MR. REISH:  Your Honor, with regard to any Jencks or

19  transcripts of grand jury testimony from government witnesses,

20  would there be some type of early disclosure?  There usually

21  would be.  I assume there would be by the government.  I never

22  felt the need to have it ordered, but I don't know there's

23  anything.

24            THE COURT:  Well, when is it you intend to turn over

25  your Jencks material?

1        MR. HINKLEY:  Generally we do it Friday before jury

2    selection.  I don't want to state on the record that's what is

3    going to happen.  I intend to do that, but I don't think we are

4    actually required until we have called the particular witness.

5    But generally as a matter of course we do it Friday before.

6        THE COURT:  Technically under rule 3500 the time is

7    they have to turn it over is after the witness has testified,

8    and I never seen that happen.  It's done usually before that.

9    And so the weekend before is -- Friday before is again in my

10   experience a normal time.  But perhaps counsel and you can talk

11   about whether or not there's, you know, any earlier time that

12   can be given.

13       MR. REISH:  I don't think it would be a lengthy -- I

14   don't think a lot of material.  Seems like there's a few

15   witnesses so that would be appropriate for this type of case.

16       THE COURT:  All right.  Well, I will leave that to

17   counsel in terms of -- it's clear to me that 3500 sets forth

18   the dates, and certainly the government must comply with that.

19   If they are willing to comply with earlier times, then I would

20   encourage them to do that.  But I guess I will let you two

21   discuss that.  What else?

22       MR. REISH:  There a few possible discovery items I

23   brought up to the government.  They are going to comply with

24   the request.  It was a supplemental request for Giglio

25   materials.  I am confident they can do so.  I am looking for

1  performance evaluations and on-the-job evaluations from some of

2  the C. O.s.  I believe there's a proper channel they can go

3  through to look for those and any other things that might be

4  relevant, so I trust they'll do that.  That was really the only

5  outstanding issue that I've had with the government that just

6  came up recently.

7         THE COURT:  Are there anyone -- are there any motions

8  in limine that we're anticipating or expecting at this stage?

9         MR. HINKLEY:  The defendant does have a criminal

10 history as the Court is aware.  And in addition to the crime

11 for which he's currently serving a federal sentence, he has a

12 conviction which is crimen falsi also within ten years.  I may

13 file in limine motions requesting the opportunity to use those

14 as crimen falsi as prior convictions if the defendant

15 testifies.

16        THE COURT:  Well, you can certainly do that.  But the

17 rules allow for use of crimen falsi testimony within ten years.

18 So I am not sure that you need actually a motion in limine from

19 the Court.  Under the rules that's allowed.  Normally I think

20 the side that would be arguing that you shouldn't be allowed to

21 use that since the rules says you can use that would be the

22 other side if it turns out that they were thinking that was

23 appropriate in the case or perhaps, you know, are not as

24 concerned about that in light of where the defendant is

25 presently living and housed and the fact the jury will know --

1  but I don't know what the answer to that question is.  I'm not

2  so sure you need a motion affirmatively requesting things that

3  you would be entitled to.

4          Now, if you didn't think you were going to be

5  entitled it or it's a problem, perhaps you would do it that

6  way.  If there are any motions in limine, they should be filed

7  by January 4th -- is that the --

8          MS. SEMPA:  I think they were technically due today.

9          THE COURT:  They were already scheduled to be filed.

10          MS. SEMPA:  Correct, today.

11          THE COURT:  Right, okay.  Then that's right.  My

12  scheduling order probably had already indicated those.  So I

13  would assume that they're done then.  What else?

14          MR. REISH:  I assume the government is -- I haven't

15  received notice that they will be bringing in any conspiracy

16  convictions, but that might be outstanding if he does take the

17  stand and they want to bring out the drug conspiracy

18  conviction, that might be a 609 issue.  I can talk with

19  attorney Hinkley about that.

20          THE COURT:  Yeah, any --

21          MR. REISH:  That would require a balancing test.

22          THE COURT:  Normal evidentiary determinations, we can

23  just -- we will make at trial.  You know, there are always --

24  whatever the evidentiary rulings are depend upon what evidence

25  is actually being presented which often we don't know.  I don't

1  know if Mr. Bailey-Snyder intends to testify or not testify,

2  and that, of course, will change what we have to worry about or

3  not worry about.

4       My guess is that just like Mr. Hinkley is going to

5  hold on to his Jencks material for a while, my guess is Mr.

6  Reish isn't going to inform us of the determination of whether

7  or not the defendant will testify quite yet either.  That's all

8  part of -- we will make rulings as it becomes appropriate and

9  the evidence is presented.  So that doesn't concern me too much

10 at this stage.  What else?

11      MR. HINKLEY:  I can't think of anything, Your Honor.

12      THE COURT:  Okay.

13      MR. REISH:  I have a couple notes if I can just

14 double check.

15      THE COURT:  Sure.  Absolutely, please.

16      MR. REISH:  Your Honor, I'll clarify to make sure the

17 record is clear.  I misspoke.  His prior wasn't conspiracy for

18 drug delivery, it was actual drug delivery.  It might have some

19 relevance in regard to 609, but I did misspeak.

20      THE COURT:  Okay.

21      MR. REISH:  Nothing further.

22      THE COURT:  Anything else from the government?

23      MR. HINKLEY:  Nothing.

24      THE COURT:  I hope you have a good Thanksgiving.  We

25 will see you on the 11th.  Thank you.

1          MR. HINKLEY:   Thank you, Your Honor.

2          MR. REISH:   Thank you, Your Honor.

17

1                      REPORTER'S CERTIFICATE

2

3      I, Laura Boyanowski, RMR, CRR, Official Court Reporter for

4   the United States District Court for the Middle District of

5   Pennsylvania, appointed pursuant to the provisions of Title 28,

6   United States Code, Section 753, do hereby certify that the

7   foregoing is a true and correct transcript of the

8   within-mentioned proceedings had in the above-mentioned and

9   numbered cause on the date or dates hereinbefore set forth; and

10  I do further certify that the foregoing transcript has been

11  prepared by me or under my supervision.

12

13

14                           _____
                             Laura Boyanowski, RMR, CRR
15                           Official Court Reporter

16  REPORTED BY:

17      LAURA BOYANOWSKI, RMR, CRR
        Official Court Reporter
18      United States District Court
        Middle District of Pennsylvania
19      235 N. Washington Avenue
        Scranton, PA  18503

20

21      (The foregoing certificate of this transcript does not
    apply to any reproduction of the same by any means unless under
22  the direct control and/or supervision of the certifying
    reporter.)

23

24

25